UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


United States of America,                                         Case No. 3:15-cr-371

                    Plaintiff

        v.                                                        MEMORANDUM OPINION


Ira Brown,

                    Defendant


        This matter is before me on Defendant Ira Brown's motion to suppress the identifications of

him made by the confidential informant ("CI") and by the undercover agent who accompanied the

CI during the transaction in question.  (Doc. No. 13).  The government responded (Doc. No. 15),

and Brown replied (Doc. No. 19).  On March 2, 2017, I conducted a suppression hearing.  (Doc.

No. 26).  At that time, the parties agreed to construe Brown's motion to suppress to include any

identification made of Brown, including that made by Detective William Noon.  (*Id.* at 4-5).

        At the end of the hearing, I gave the parties time to further brief the matter, and I granted

Brown leave to renew his motion for release of the CI's identity.  (*Id.* at 43-51).  Brown subsequently

declined, without prejudice, to renew his motion seeking release of the CI's identity.  (Doc. No. 27

at 2).  Brown also asked that I hold the motion to suppress in abeyance so that he could further

develop his factual information.  (*Id.*).  I granted Brown's motion.  (Doc. No. 30 at 2).  During a

pretrial conference call, held on May 15, 2017, Brown withdrew his motion to hold the matter of

suppression in abeyance.  The matter is now decisional.  For the reasons stated below, I deny

Brown's motion to suppress with respect to Detective Noon's personal observations.  And I deny,

without prejudice, Brown's motion to suppress the identification made by the CI.  The latter is

subject to renewal if the CI becomes a trial witness.

Detective Noon was the sole witness to testify at the suppression hearing. (Doc. No. 26). Detective Noon has been a member of the Toledo Police Department for twenty years, and he has been assigned to the gang unit for fifteen of those years. (*Id.* at 5-6, 8). Detective Noon has also been a task force officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives for eight years. (*Id.* at 6).

A CI with whom Detective Noon had been working arranged for the purchase of a gun. (*Id.*). Prior to the transaction, the CI told law enforcement officials the seller was Brown and gave them Brown's street name. (*Id.* at 9, 29-30). At that time, Detective Noon did not know Brown's street name. (*Id.* at 25). But Detective Noon was familiar with Brown and had met him face-to-face once. (*Id.* at 8). Detective Noon also looked at a booking photograph of Brown, after speaking with the CI, to check for any recent change in Brown's appearance. (*Id.* at 42).

On October 16, 2013, Detective Noon took part in an undercover operation, during which the CI bought a firearm from a man alleged to be Brown. (*Id.* at 7-8). While an undercover agent drove the CI to the meeting place for the transaction, Detective Noon and ATF Special Agent Greg Cooper followed behind until a designated point, at which they took at different route to surveil the neighborhood "to try to get an eye on the transaction . . . ." (*Id.* at 10-11). Detective Noon and SA Cooper were traveling eastbound on Page Street and were crossing Mulberry Street when Detective Noon observed Brown standing on the north side of Page Street. (*Id.* at 12). Detective Noon, who was driving, recognized Brown, noted what he was wearing, and told SA Cooper that Brown was standing at the corner. (*Id.* at 12-16).

Detective Noon and SA Cooper continued around the block and drove west on Moore Street, stopping about a block from the meeting place. (*Id.* at 17-18). The undercover agent and CI arrived soon thereafter and parked near the corner of Mulberry and Moore Streets. (*Id.* at 18). Detective Noon then observed an individual approach the passenger side of the vehicle driven by

the undercover agent. (*Id.*). Detective Noon thought it might be Brown based on the individual's build, race, and clothing. (*Id.*). Detective Noon used a pair of handheld binoculars and observed a man he identified as Brown "pass on either side of the vehicle." (*Id.*). Detective Noon observed "hand-to-hand action taking place" but could not tell what was exchanged. (*Id.* at 18-19). This transaction took place during daylight hours, and there was nothing obstructing Detective Noon's view. (*Id.* at 13-14, 19).

A few weeks after the transaction, on November 8, 2013, Detective Noon met with the CI. (*Id.* at 19-20). Detective Noon again asked the CI who had sold him the gun during the undercover operation. (*Id.* at 20-21). Without hesitation, the CI said the seller was Brown. (*Id.*). After folding back the top of the photograph containing Brown's identifying information, Detective Noon showed Brown's booking photograph to the CI. (*Id.* at 20-22). The CI identified Brown as the subject of the photograph. (*Id.* at 20-22).

Shortly before the suppression hearing, Detective Noon was informed that his observations of Brown from the transaction in 2013 were never memorialized in the undercover agent's written report. (*Id.* at 26-28). So on February 28, 2017, Detective Noon wrote a report detailing his observations. (*Id.*). Detective Noon also used his report to correct some of the mistakes recorded in the original report. (*Id.* at 26-28, 30-31).

## STANDARD

An identification violates a defendant's right to due process where the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). "It is the likelihood of misidentification which violates a defendant's right to due process . . . ." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Where an identification is based on the examination of a single photograph, the court should determine the reliability of the identification using the factors set forth in *Neil*. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). "These include the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.* "[T]he essential question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *United States v. Causey*, 834 F.2d 1277, 1284-85 (6th Cir. 1987) (internal quotation marks and citations omitted).

## DISCUSSION

Brown asks me to suppress the CI's identification of him, claiming the method used was "unnecessarily suggestive." (Doc. No. 13 at 2). Brown further argues Detective Noon's identification of Brown should be suppressed to the extent he relied on the CI's identification. (*Id.*).

Turning first to the CI's identification, I find no reason at this time to suppress the identification. While using a single-photograph identification method is suggestive, here law enforcement did not rely solely on that method. Detective Noon testified that prior to the transaction the CI told law enforcement he would be purchasing a gun from Brown and also gave officers Brown's street name, which was previously unknown to Detective Noon. (Doc. No. 26 at 9, 25, 29-30). Approximately three weeks after the transaction, Detective Noon spoke with the CI and asked him to identify the man who sold him the gun during the undercover operation. (*Id.* at 19-21). The CI, without hesitation, again identified the seller as Brown. (*Id.*). Then Detective Noon showed Brown's booking photograph to the CI, absent any identifying information about Brown. (*Id.* at 20-22). The CI identified Brown in the photograph. (*Id.* at 20-22).

Analyzing the totality of the circumstances using the *Neil* factors, I find the identification was reliable. *See Neil*, 409 U.S. at 199-200. But because the CI's identity is as yet undisclosed, I deny Brown's motion to suppress the identification made by the CI without prejudice, subject to renewal if the CI becomes a witness for trial.

As for Detective Noon's identification of Brown, I find it reliable. Brown, presuming the CI's identification to be unreliable, argues Detective Noon's identification of Brown was thus tainted by the CI. (Doc. 13 at 2). But even if the CI's identification of Brown was suspect, which I have not found it to be at this time, Detective Noon already knew Brown by name and appearance prior to the CI identifying him. (Doc. No. 26 at 8). Detective Noon then checked a booking photograph of Brown prior to the transaction to check for any change in his appearance. (*Id.* at 42). On the way to the exchange site and in a car separate from the CI, Detective Noon says he first identified Brown standing on a nearby street corner. (*Id.* at 12). And during the transaction, Detective Noon was a block away observing the exchange through a set of binoculars when he says he next identified Brown. (*Id.* at 17-19). Given that Detective Noon was independently familiar with and able to identify Brown, I find his identification to be reliable, and I deny Brown's motion to suppress his identification.

## CONCLUSION

Accordingly, I deny Brown's motion to suppress the identification made by Detective Noon. (Doc. No. 13). I deny without prejudice the identification made by the CI, subject to renewal if the CI becomes a trial witness. (Doc. No. 13).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge